UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

TANYA JEANE CARTER,

               Plaintiff,

v.                                   CIVIL ACTION NO. 2:14-cv-27009

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12), Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 14).

Background

Tanya Jeane Carter, Claimant, applied for Disability Insurance Benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act (Tr. at 138-141) and Supplemental Security Income (SSI) (Tr. at 142-170) on March 8, 2011, alleging disability beginning on August 9, 1999. The claims were denied initially on May 31, 2011 (Tr. at 60-62 and 71-73), and upon reconsideration (Tr. at 86-88 and 93-95). Claimant filed a written request for hearing on October 6, 2011 (Tr. at 100-102). In her request for a hearing by Administrative Law Judge (ALJ), Claimant stated she disagreed with the determination made on her claim for Supplemental Security Income/Social Security benefits because the decision was contrary to the medical evidence and regulations (Tr. at 100). Claimant appeared in person and testified at a hearing held in Huntington, West Virginia on December 3, 2012 (Tr. at 32-52). In the Decision dated January 25, 2013, the ALJ determined that based on the application for a period of disability and disability insurance

benefits filed on March 8, 2011, the Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Further, the ALJ determined that based on the application for supplemental security income filed on March 8, 2011, the Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. On approximately February 12, 2013, Claimant filed a Request for Review of Hearing Decision of the ALJ because the ALJ's decision was contrary to the medical evidence and regulations (Tr. at 13). On March 11, 2014, the Appeals Council denied Claimant's request for review because it "found no reason under our rules to review the Administrative Law Judge's decision." The Appeals Council stated it considered the reasons for Claimant's disagreement with the decision and the material listed in the Order of Appeals Council and found that the information did not provide a basis for changing the Administrative Law Judge's decision (Tr. at 1-5).

On October 17, 2014, Claimant brought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse, remand, or modify that decision.

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of August 9, 1999, and meets the insured status requirements of the Social Security Act through June 30, 2000 (Tr. at 20).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bipolar disorder, obsessive disorder and panic disorder without agoraphobia. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 21).  The ALJ then found that Claimant has a residual functional capacity to perform a full range

of work at all exertional levels[1] (Tr. at 22).  The ALJ concluded that Claimant could not perform

past relevant work but could perform work  as a heavy level, commercial cleaner, freight handler,

hospital cleaner, laundry worker, light level hand packager, hotel maid and sorter (Tr. at 25-26).

On this basis, benefits were denied (Tr. at 26).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was

defined as:

> Evidence which a reasoning mind would accept as sufficient to
> support a particular conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less than a
> preponderance. If there is evidence to justify a refusal to direct a
> verdict were the case before a jury, then there is "substantial
> evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d

640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving

conflicts in the evidence.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless,

the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v.

Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not

supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on July 19, 1976, and was 23 years old on the alleged disability onset

---

[1] The ALJ found that Claimant is limited to unskilled work that involves only one-, two- or
three-step instructions.  She can deal with the public occasionally (Tr. at 22).

4

date. Claimant is married and lives with her husband. She has a high school education.  She last worked as a telemarketer in 1998, and left because of childcare issues and she was beginning to get forgetful (Tr. at 36-37).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in assessing her credibility (ECF No. 12).  Claimant argues that the ALJ failed to properly evaluate the required seven factors in determining credibility as provided by SSR 96-7p.   Claimant asserts that the ALJ summarized her allegations and testimony instead of "carefully considering" them (ECF No. 14).  Also, Claimant asserts that the ALJ failed to properly evaluate the opinion of her treating physician and whether her failure to give that opinion controlling or deferential weight was reversible error.   Defendant asserts that the ALJ followed the controlling regulations in evaluating Claimant's credibility and her treating physician's opinion (ECF No. 13).

Medical Record

The Court adopts the medical record findings asserted by Claimant and Defendant to the extent as follows (ECF Nos. 12, 13 & 14):

> The relevant time period for purposes of Plaintiff's DIB application is a narrow 11-month period from August 9, 1999, her alleged disability onset date, through June 30, 2000, her date last insured (Tr. 179).   To receive DIB, Plaintiff must prove disability on or prior to June 30, 2000.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a).
>
> For purposes of Plaintiff's SSI application, the relevant time period began on April 1, 2011 (the first date of the month following the date on which she filed her SSI application) (Tr. 179). *See* 20 C.F.R. § 416.202 (stating a claimant is not eligible for SSI until, among other factors, the date on which she files an application for SSI benefits); § 416.501 (claimant may not be paid for SSI for any time period that predates the first month she satisfies the eligibility requirements, which cannot predate the date on which an application was filed); *see also Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir.

1997) (noting that SSI benefits are not payable for any period prior
to the filing of an application).    The relevant time period with
respect to her SSI claim ended on January 25, 2013, the date of the
ALJ's decision (Tr. 15).   See 20 C.F.R. § 416.330 (stating that an
application for benefits remains in effect until the date of the ALJ's
decision). (ECF No. 12).

\*\*\*

     During the 13-year period in which Plaintiff alleges that she
was disabled, she had a few sporadic hospitalizations. During the
relevant period, she also treated with psychiatrist Claire Belgrave,
M.D., approximately every 3 months.

     At a hospital visit in August 1999, Plaintiff alleged having
mental problem for many years, though she had never previously
sought any psychiatric treatment (Tr. 228).    At that time, she
improved with medication such that at discharge she was feeling
better with a normal mood and normal thoughts (Tr. 228).   Then,
outside of the relevant period, Plaintiff had a couple of sporadic
hospital visits, during which she improved each time with treatment
(Tr. 243, 245).

     On March 31, 2011 (the day before Plaintiff applied for SSI),
Dr. Belgrave completed a form at Plaintiff's request (Tr. 305-08).
Dr. Belgrave stated that Plaintiff was "severely impaired" with
"frequent severe mood swings" and had "marked" and "extreme"
psychological symptoms (Tr. 305, 307-08), reflecting Plaintiff's
complaints at the prior visit on March 24, 2011 (Tr. 352).   However,
Dr. Belgrave also stated that she was "unable to determine" what
work-related activities Plaintiff's impairments affected (Tr. 306).
Dr. Belgrave further assigned Plaintiff a Global Assessment of
Functioning (GAF) score of 60, which indicates at most moderate-
borderline-mild symptoms/limitations (Tr. 305). (ECF No. 13).

\*\*\*

     On April 20, 2011, Claimant attended a consultative
examination with psychologist Kelly Robinson, M.A., at the request
of the state agency (Tr. 309-14).   At that time, Claimant was not
taking her medication as prescribed (Tr. 350-51).    Upon
examination, Claimant had a dysphoric mood and mildly restricted
affect, but logical thoughts, normal judgment, fair insight, normal
concentration, and normal immediate, recent, and remote memory
(Tr. 311-12). Ms. Robinson concluded that Claimant's social
functioning was only mildly deficient, attention and concentration
were normal, persistence was normal, and pace was normal (Tr.
312). (ECF No. 13).

\*\*\*

In May 2011, a state agency psychologist, Jeff Harlow, Ph.D., reviewed the evidence in connection with Claimant's initial application (Tr. 316-43). He stated that there was insufficient evidence of an impairment between August 9, 1999 (Claimant's alleged onset date) and June 30, 2000 (Claimant's date last insured), the time period that Claimant was insured for DIB (Tr. 179, 316, 328). Dr. Harlow further found that Claimant's mental impairments were non-severe from March 8, 2011 (the date of Claimant's application) to May 20, 2011 (the date of Dr. Harlow's assessment), the time period relevant to Claimant's SSI application (Tr. 330, 340, 342). In August 2011, another state agency psychologist, Timothy Saar, Ph.D., affirmed Dr. Harlow's assessment (Tr. 354). (ECF No. 13).

<u>Testimony</u>

Claimant testified that she was unable to work due to anxiety, depression, and mania which she sometimes experienced all in one day (Tr. 37). She stated that every day differs with regard to her symptoms, stating that sometimes she had mania for six months out the year and then six months of depression, or it could be mixed (Tr. 37). She stated that she was taking Lamictal, Anafranil, Propanol, and Seroquil (Tr. 37). She stated that in addition to having weight gain with taking the Seroquil, the medications also caused shaking, sometimes more anxiety, and tiredness (Tr. 37-38). Claimant stated that she saw her doctor, Dr. Belgrave, every three months at which time she would speak to her and get medication (Tr. 38). She stated she also saw a family doctor if she was sick (Tr. 38). Claimant testified that she was not seeing a counselor but had seen a psychologist at one time (Tr. 38-39).

Claimant testified that there were times when she did not take care of her personal needs because with the depression she could not get out of bed, for days at times, and with mania she could not give her attention to anything (Tr. 39). She stated that she had difficulty sleeping and slept from two to six hours at night; she took Restoril to help her sleep (Tr. 39). She stated that she also napped during the day (Tr. 39).

Claimant testified that she usually got up at 11:00 am or noon and that she woke up with anxiety "a lot of times" (Tr. 40). She stated that some days she could not get up at all and sometimes she was "okay" (Tr. 40). On an "okay day" she would take her medications, try to clean her house, and go to her sister's (Tr. 40). On a "not okay day" she would stay in her room and not go out (Tr. 40). She stated she could do laundry, she shopped once per

month, and she tried to do housework (Tr. 40). She stated she did not do yard work and that if she could not cook her husband would cook (Tr. 40-41). Claimant stated that she had a driver's license and was able to drive (Tr. 41). Her mother drove her to the hearing, which was a forty-five minute drive, during which she felt anxious and nervous (Tr. 41). Claimant stated that she had no hobbies and for activities "I just watch TV" (Tr. 41). She stated that she used to go to church, was part of the youth group at church, and used to take her children to football practice (Tr. 41). She stated that she engaged in no social activities (Tr. 41).

Claimant stated that if she were manic she could not sit, but if she was depressed she did not want to move at all (Tr. 41). She testified that when depressed she laid down rather than sitting (Tr. 41-42). She stated she could only stand for fifteen minutes before she got dizzy, which she thought was a side effect of Seroquil (Tr. 42). She estimated that she could walk fifty feet (Tr. 42). She was not sure how much she could lift, but stated she could probably carry no more than a gallon of milk because her legs were unstable, which she also attributed to a side effect of Seroquil (Tr. 42). She testified that her hands sometimes got stiff and numb, worse on the right, and if her hands were stiff she could not feel with them; she sometimes lost her grip (Tr. 42-43). She testified that she could button and unbutton things (Tr. 43).

Claimant stated that her memory was "better in the present than it is in the past" (Tr. 43). She stated that she could not always follow the story of a program she was watching on television because "I stare into space a lot, and I don't even realize I'm doing it" (Tr. 43). She stated that if that happened she had to replay what she was watching (Tr. 43). She testified that if someone told her how to do something she would have to "ask again" (Tr. 43). She stated that she could use a computer, but when she had the internet for a while she had to give it up because when she was manic it was too confusing and too much for her (Tr. 43-44).

Claimant stated that when she was around crowds of people she got panic attacks and anxiety attacks so she just stayed at home (Tr. 44). She also stated that she had problems with strangers in that she would get angry with them for no reason and it felt like people were in her way (Tr. 44). Claimant testified that she had been hospitalized for six days in July or August of 1999 and she spent fifteen days at Mildred Bateman in August of 1999 (Tr. 44-45). Claimant stated she was also hospitalized for seven or eight days in 2008 (Tr. 45). She stated she had other hospitalizations but could not remember the dates because they all tended to blend together (Tr. 45).

Claimant testified that when she was in a depressive state she laid in bed all day, not even watching television (Tr. 50). When in

8

this state she sometimes showered and changed her clothes and sometimes she did not (Tr. 50). She ate things that were easy to make (Tr. 50). She stated that the depressive state could last on and off all year (Tr. 50). She stated that her hospitalizations were all due to suicidal thoughts or attempts and that she had not been hospitalized since 2008 because her doctor prescribed Lamictal starting in June, 2008, and that had helped with her mood swings, her anxiety, and her obsessive compulsive disorder ("OCD") symptoms (Tr. 50). She stated that she still had OCD symptoms such as counting how many seconds water is running and washing her hands "a million times" in order to relieve anxiety (Tr. 50-51). She stated that she has to "repeat, repeat, and repeat things to keep the bad thoughts away" and that she couldn't sleep (Tr. 51). She testified that the Seroquil helped calm her at times and at times it did not (Tr. 51). She stated she had been having panic attacks about one a week; they came out of nowhere and were about dying and choking (Tr. 51). She stated that she was afraid to eat because she was afraid she would choke (Tr. 51). She stated that she sometimes had the panic attacks in public (Tr. 52). (ECF No. 12).

## Credibility Determination

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

In the present matter, substantial evidence does not support the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The Fourth Circuit has held that the ALJ's failure to evaluate a claimant's credibility before analyzing the RFC is harmful error and

requires remand.  *Mascio v. Colvin*, 780 F.3d 632, 639-640 (4th Cir. 2015).  Although the ALJ states that in determining the RFC findings she considered "all symptoms and extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinion evidence, the ALJ failed to evaluate Claimant's credibility prior to her RFC analysis (Tr. at 22).

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference").   When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged.  *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929.   As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.  *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

An ALJ is required to evaluate seven factors in determining credibility. SSR 96-7p states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of

10

evidence, including the factors below, that the adjudicator *must* consider *in addition* to the objective medical evidence when assessing the credibility of an individual's statements:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms (Italics supplied)

*See also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); *Adkins v. Astrue*, 664 F. Supp. 2d 657, 667-668 (S.D. W. Va. 2009).

Defendant's assertions are adopted, in part, as the following:

In the present matter, the ALJ considered the evidence in accordance with the factors described in SSR 96-7p. The ALJ was required to use no particular language in assessing Claimant's work capacity. The ALJ did not find Claimant's complaints fully credible. The ALJ restricted Claimant to a limited range of light, unskilled work involving limited interaction with others (Tr. 22). Furthermore, although the ALJ did not find Claimant's complaints fully credible, the ALJ nonetheless adopted those allegations she believed to be supported by the record by finding her restricted to a limited range of light, unskilled work involving limited interaction with others (Tr. 22).   (ECF No. 13).

Order of the ALJ's Evaluations

The procedural sequence which an ALJ must follow in determining credibility of a claimant and in determining a claimant's RFC is an issue necessitating remand in the present

11

matter.  The regulations  on assessing credibility state that "We will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons."  20 C.F.R. §§ 404.1529(c)(3) and 416.929. When an ALJ evaluates a claimant's RFC, a medical assessment of the claimant's remaining capabilities to work, he considers all of the relevant medical and other evidence. See  20 C.F.R. § 404.1513; SSR 96-8p.  In cases in which symptoms, such as pain, are alleged, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations.  Additionally, the RFC assessment must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.  Richard C. Ruskell, *Social Security Disability Claims Handbook* (2015 Edition), 214 n.5.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts… and nonmedical evidence."  Courts have held that an ALJ failed to follow SSR 96-8p "by merely summarizing the medical evidence.  The Ruling requires a narrative discussion of the RFC to show how the evidence supports the ALJ's conclusion."  *Munday v. Astrue*, 535 F.Supp. 2d 1189, 129 Soc. Sec. Rep. Serv. 726 (D. Kan. 2007).  The RFC assists the ALJ in determining whether the claimant retains enough vocational capacity to return to work.  When calculating the RFC, the ALJ must take all factors into account and explain his conclusions with substantial evidence.  *See Kotofski v. Astrue*, 157 Soc. Sec. Rep. Serv. 313, 2010 WL 3655541 (D. Md. 2010).

Furthermore, the ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge. . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ found Claimant to have the RFC to perform a full range of work at all exertional levels but with nonexertional limitations in that she is limited to unskilled work that involves only one-, two- or three-step instructions. She can deal with the public occasionally (Tr. at 22). Then, the ALJ listed Claimant's statements regarding her anxiety, depression, activity and inactivity, and memory (Tr. at 22-23). The ALJ did not analyze Claimant's assertions of pain or evaluate the seven required factors listed in SSR 96-7p in determining Claimant's credibility. The ALJ did not explain the inconsistencies in Claimant's testimony and the evidence as a whole. After summarizing Claimant's testimony and assertions, the ALJ stated "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" (Tr. at 23).

The ALJ provided the following reasons for finding Claimant's testimony "less than fully credible:"

1.  Although Claimant asserts that she was admitted to hospitalization in 1998 for mental health issues, the ALJ found no records to support that admission. Also the ALJ found

13

Claimant's other reported hospitalization dates and places to be inaccurate with the records.  For example, Claimant admitted to hospitalization in 1999 and 2006 at Mildred Mitchell-Bateman Hospital, a mental health facility. However, the ALJ's decision points out that "Records confirm her admission to Mildred Mitchell-Bateman Hospital in 1999 but records show a hospitalization at Highland Hospital in 2006 for mental health issues, not Mildred Mitchell-Bateman Hospital" (Tr. at 23).

2. When in Mildred Mitchell-Bateman Hospital in 1999, Claimant reported obsessive symptoms and depression for many years.  The ALJ stated that Claimant had not previously sought any treatment which suggested to the ALJ that Claimant's "symptoms were not interfering with her daily life." (*Id.*)

3. Prestera Center for Mental Health, Inc. records from May 2010, demonstrate that Claimant reported her husband was doing everything to get her out of bed during the day, but later stated she was living with her boyfriend (Tr. at 24)

4. The ALJ relied upon treatment records from July 2012, stating that Claimant developed vomiting and diarrhea after swimming in the creek when the power was out to suggest Claimant was "able to get out and do things."  (*Id.*)

The ALJ's reasons for finding Claimant's testimony "less than fully credible," *supra*, do not contain an evaluation of the 7 factors required to determine credibility per SSR 96-7p. Claimant testified that her memory was "better in the present than it is in the past" and that she could not remember her hospitalization dates because "it just tends to blend" (Tr. at 43-45). Claimant's alleged disability onset date is August 9, 1999, therefore Claimant's lack of treatment for psychological symptoms prior to 1999 does not discredit her testimony.  Additionally, it is not

beyond the realm of possibility for Claimant to have a husband and boyfriend simultaneously.[2]  As Claimant has been married twice, it is also not impossible for her to have a husband and boyfriend at separate times[3] (Tr. at 311).  More specific information about the matter is needed to determine if Claimant's statements referencing a husband and a boyfriend are credible.  Lastly, swimming in a creek in July when the power is out could possibly be a person's attempt to bathe or cool off.  More specific information about the situation and circumstances are needed to determine if this is evidence that Claimant can "get out and do things."

The ALJ's summary of Claimant's testimony to support her finding that Claimant was not entirely credible was one sided and did not discuss statements or relevant records which supported Claimant's assertions.  Under SSR 96-7p, one factor the ALJ is required to consider includes the individual's functional limitations and restrictions due to pain or other symptoms.    Several examples of Claimant's mental history, treatment and limitations the ALJ neglected to consider are as follows:  first, when the ALJ discussed Claimant's admission to Mildred Mitchell-Bateman Hospital in August 1999, and when the ALJ discussed mental impairments of anxiety and depression, she did not discuss Claimant's suicidal ideations;  second, the ALJ did not discuss the August 16, 1999, Protective Detention Order by the Magistrate in Boone County, West Virginia, for involuntary hospitalization, which found that Claimant needed to be immediately detained for her own protection or for the protection of other persons after Claimant attempted suicide by cutting her wrists on August 14, 1999; third, the ALJ failed to discuss that the Magistrate also

---

[2] On August 6, 1999, Claimant was evaluated by the psychiatric department at St. Mary's Hospital and admitted to the psychiatric floor (Tr. at 369).  Upon evaluation, Claimant reported "to having many feelings of guilt about an affair that she had in retaliation for her husband having had an affair" (Tr. at 370).

[3] During an evaluation dated April 20, 2011, Claimant reported to divorcing her first husband in 2009.  She stated that she had been with her second husband for 6 months at that time (Tr. at 311).  During a prior evaluation dated May 4, 2010, Claimant reported living with her boyfriend (Tr. at 257-258).  Claimant was in between marriages at the time she reported living with her boyfriend.

reported that Claimant "says she has the devil in her" and "says she has a plan to commit suicide by running out in front of a vehicle"; and fourth, the ALJ did not mention Claimant's August 18, 1999, psychological evaluation in which she reported that "she has been depressed and has been experiencing intrusive, blasphemous thoughts regarding having sex with Jesus" (Tr. at 237, 393-396).

In this case, Claimant alleges symptoms, including pain, which the RFC assessment must thoroughly discuss. The ALJ failed to analyze the objective medical evidence and other evidence, including the individual's complaints of pain and other symptoms. Additionally, the ALJ's RFC assessment failed to include a resolution of inconsistencies in the evidence as a whole and set forth a logical explanation of the effects of the symptoms, including pain, on Claimant's ability to work.

Accordingly, because the ALJ failed to evaluate Claimant's credibility before analyzing the RFC and the ALJ failed to consider the involuntary hospitalization regarding suicide ideations as treatment Claimant received when the ALJ assessed the credibility of Claimant's statements, the undersigned recommends the District Judge find that Defendant's credibility assessment is not supported by substantial evidence. Other issues raised by the parties shall be addressed on remand.

Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12), **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 13), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge John T. Copenhaver.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  February 18, 2016

Dwane L. Tinsley
United States Magistrate Judge